**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DAVID PILL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ANIXTER INTERNATIONAL INC., SAMUEL ZELL, LORD JAMES BLYTH, FREDERIC F. BRACE, LINDA WALKER BYNOE, ROBERT J. ECK, WILLIAM A. GALVIN, F. PHILIP HANDY, MELVYN N. KLEIN, JAMIE MOFFITT, GEORGE MUÑOZ, SCOTT R. PEPPET, VALARIE L. SHEPPARD, WILLIAM S. SIMON, CHARLES M. SWOBODA,<br><br>Defendants. | Civil Action No. _____<br><br>CLASS ACTION COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff, David Pill ("Plaintiff"), by and through his attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction (the "Proposed Transaction" or "Merger") initially announced on October 30, 2019, pursuant to which CD&R Arrow Parent, LLC ("CD&R"), an indirect wholly-owned subsidiary of funds sponsored by Clayton, Dubilier & Rice, LLC, will acquire Anixter International Inc. ("Anixter" or the "Company").

2. On October 30, 2019, Anixter's Board of Directors (the "Board" or the "Individual Defendants") caused the Company to enter into an Initial Agreement and Plan of Merger (the "Initial Merger Agreement") with CD&R, a Delaware corporation, and CD&R Arrow Merger Sub, Inc., a direct, wholly-owned subsidiary of CD&R ("Merger Sub"). In

accordance with the Initial Merger Agreement, at the effective time of the Proposed Transaction, Merger Sub will be merged with and into Anixter, leaving Anixter as the surviving company in the merger, a wholly-owned subsidiary of CD&R. Each share of Anixter common stock issued and outstanding immediately prior to the effective time (other than those owned by CD&R, Anixter, Merger Sub, and stockholders who are entitled to demand and have properly demanded appraisal of such shares in accordance with Section 262 of the Delaware General Corporation Law) will be automatically converted into the right to receive $81.00 in cash.

3. The Initial Merger Agreement was amended on November 21, 2019 (the "Amended Merger Agreement"), providing for the acquisition of the Company by CD&R at an increased price of $82.50 per share in cash ("Merger Consideration").

4. On December 4, 2019, Defendants (as defined below) filed a Proxy Statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC"). As described herein, the Proxy Statement omits certain material information with respect to the Proposed Transaction, which renders it false and misleading, in violation of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 140.14a-9 ("Rule 14a-9") promulgated thereunder.

5. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from Defendants' wrongdoing described herein.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

7. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business within this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper under 28 U.S.C. § 1391 because Anixter is incorporated in this District and a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

9. Plaintiff is, and has been at all times relevant hereto, the owner of Anixter common stock.

10. Defendant Anixter is a Delaware corporation headquartered near Chicago, Illinois. Shares of Anixter common stock are traded on the New York Stock Exchange under the symbol "AXE."

11. Defendant Samuel Zell ("Zell") has served as Chairman of the Board of Directors ("Board") since 1985.

12. Defendant William A. Galvin ("Galvin") has served as a Board member since 2008, President of the Company since 2017, and Chief Executive Officer since 2018.

13. Defendant Lord James Blyth ("Blyth") has served as a Board member since 1995.

14. Defendant Frederic F. Brace ("Brace") has served as a Board member since 2009.

15. Defendant Linda Walker Bynoe ("Bynoe") has served as a Board member since 2006.

16. Defendant Robert J. Eck ("Eck") has served as a Board member since 2008.

17. Defendant F. Philip Handy ("Handy") has served as a Board member since 1986.

18. Defendant Melvyn N. Klein ("Klein") has served as a Board member since 1985.

19. Defendant Jamie Moffitt ("Moffitt") has served as a Board member since 2018.

20. Defendant George Muñoz ("Muñoz") has served as a Board member since 2004.

21. Defendant Scott R. Peppet ("Peppet") has served as a Board member since 2014.

22. Defendant Valarie L. Sheppard ("Sheppard") has served as a Board member since 2015.

23. Defendant William S. Simon ("Simon") has served as a Board member since 2019.

24. Defendant Charles M. Swoboda ("Swoboda") has served as a Board member since 2019.

25. The defendants listed in ¶¶ 11-24 are collectively referred to herein as the "Individual Defendants."

26. The Individual Defendants and Anixter are referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

27. According to the Company's February 2019 Form 10-K, Anixter "and its subsidiaries… are a leading distributor of network and security solutions, electrical solutions, and utility power solutions." The Company claims to "add value to the distribution process by providing approximately 130,000 customers access to innovative inventory management programs, nearly 600,000 products and over $1.0 billion in inventory, 316 warehouses/branch locations with over 9 million square feet of space, and locations in over 300 cities across approximately 50 countries." *Id.*

28. On October 30, 2019, Anixter's Board caused the Company to enter into the Initial Merger Agreement with CD&R and Merger Sub. In accordance with the Initial Merger Agreement, at the effective time of the Proposed Transaction, Merger Sub will be merged with

and into Anixter, leaving Anixter as the surviving company in the merger, a wholly-owned subsidiary of CD&R for $81.00 per share in cash.

29.    The press release announcing the Initial Merger Agreement stated, in relevant part, as follows:

> GLENVIEW, Ill.--(BUSINESS WIRE)-- Anixter International Inc. (NYSE: AXE), a leading global distributor of Network & Security Solutions, Electrical & Electronic Solutions and Utility Power Solutions, has entered into a definitive agreement with an affiliate of Clayton, Dubilier & Rice ("CD&R") to be acquired in an all cash transaction valued at approximately $3.8 billion. The transaction will result in Anixter becoming a private company and is expected to close by the end of the first quarter of 2020.
>
> Under the terms of the merger agreement, CD&R-managed funds will acquire all of the outstanding shares of Anixter common stock for $81.00 per share in cash. This represents a premium of approximately 13% over Anixter's closing price on October 29, 2019, and a premium of approximately 27% over the 90-day volume-weighted average price of Anixter's common stock for the period ended October 29, 2019.
>
> "We believe this transaction is in the best interest of Anixter and our stockholders," said Bill Galvin, Anixter's President and Chief Executive Officer. "After careful and thorough analysis, together with our independent advisors, our Board of Directors unanimously approved this transaction with CD&R, which has a strong reputation and a track record of success in helping industrial distributors, like Anixter, prosper and grow. We are also pleased that this transaction appropriately recognizes the value of Anixter's customer relationships, technology and solutions, financial management and global market position. It's a great outcome for Anixter's employees, customers and partners. As a private company, we believe Anixter will have greater flexibility to focus on and accelerate our long-term strategic priorities."
>
> Nate Sleeper, Partner at CD&R, said, "Anixter is an exceptionally well-positioned industrial distributor with leading market positions and differentiated capabilities that deliver strong customer value. We look forward to partnering with the outstanding management team, led by Bill Galvin, on initiatives to grow the business and further strengthen its competitive position while maintaining Anixter's distinctive culture grounded in operational excellence, innovation, and an unwavering commitment to the company's employees, customers, and global partners."
>
> It is anticipated that upon completion of the transaction, Bill Galvin, along with other members of Anixter's executive management team, will continue to lead the company. Anixter's Board of Directors has unanimously approved the agreement with CD&R and recommends that Anixter stockholders approve the proposed merger and merger agreement. Anixter expects to hold a Special Meeting of Stockholders to consider and

vote on the proposed merger and merger agreement as soon as practicable after the mailing of the proxy statement to its stockholders.

The transaction is subject to the approval of Anixter's stockholders, regulatory approvals and other customary closing conditions. The transaction has fully committed financing and is not subject to any condition with regard to the financing. Equity financing will be provided by Clayton, Dubilier & Rice Fund X, L.P., an approximately $10 billion pool of equity capital managed by CD&R; committed debt financing has been obtained from Bank of America, J.P. Morgan, Deutsche Bank Securities Inc. and Credit Suisse. Certain stockholders of Anixter, including entities associated with Sam Zell, Chairman of the Anixter Board, which own approximately 9% of the outstanding shares of Anixter common stock, have entered into a voting agreement with CD&R, pursuant to which they have agreed, among other things, to vote their shares of Anixter common stock in favor of the merger.

Under the terms of the merger agreement, Anixter may solicit superior proposals from third parties for a period of 40 calendar days continuing through December 9, 2019. In accordance with the merger agreement, Anixter's Board of Directors, with the assistance of its advisors, intends to solicit superior proposals during this period. In addition, Anixter may, at any time, subject to the provisions of the merger agreement, respond to unsolicited proposals that are reasonably likely to result in a superior proposal. Anixter advises that there can be no assurance that the solicitation process will result in an alternative transaction. To the extent that a superior proposal received prior to December 9, 2019 or, in certain circumstances, 10 days thereafter leads to the execution of a definitive agreement, Anixter would be obligated to pay a $45 million break-up fee to CD&R. Anixter does not intend to disclose developments with respect to this solicitation process unless and until it determines it is appropriate to do so.

Centerview Partners LLC is serving as lead financial advisor, Wells Fargo Securities, LLC is also serving as financial advisor and Sidley Austin LLP is serving as legal advisor to Anixter in connection with the transaction. BofA Securities, J.P. Morgan Securities LLC, Deutsche Bank Securities Inc. and Credit Suisse are serving as financial advisors to CD&R, and Debevoise & Plimpton LLP is serving as legal advisor to CD&R.

30. The Initial Merger Agreement was amended on November 21, 2019 by the Amended Merger Agreement, which provided for an increase in the Merger Consideration to $82.50 per share in cash.

31. The press release announcing the Amended Merger Agreement stated as follows in relevant part:

GLENVIEW, Ill. (BUSINESS WIRE) - As previously announced, on October 30, 2019, Anixter International Inc. (NYSE: AXE), a leading global distributor of Network &

> Security Solutions, Electrical & Electronic Solutions and Utility Power Solutions, entered into an Agreement and Plan of Merger (the "Merger Agreement") to be acquired by a fund sponsored by Clayton, Dubilier & Rice, LLC ("CD&R") in an all cash transaction valued at approximately $3.8 billion.
>
> Anixter today announced that Anixter and CD&R agreed to an amendment to the Merger Agreement to increase the per-share consideration payable to Anixter's shareholders to $82.50 per share in cash from $81.00 per share in cash.
>
> The revised per-share consideration represents a premium of approximately 15.5% over Anixter's closing price on October 29, 2019, and a premium of approximately 30% over the 90-day volume-weighted average price of Anixter's common stock for the period ended October 29, 2019. The transaction is now valued at approximately $3.9 billion.
>
> Under the terms of the amended merger agreement, Anixter may solicit superior proposals from third parties through 9 a.m. New York City time on November 24, 2019. Anixter advises that there can be no assurance that the solicitation process will result in an alternative transaction. To the extent that the merger agreement is terminated for a superior proposal prior to November 24, 2019 or, in certain circumstances, five days thereafter, Anixter would be obligated to pay a $60 million break-up fee to CD&R. If the merger agreement is terminated for a superior proposal after the aforementioned period, Anixter would be obligated to pay a $100 million break-up fee to CD&R.

32. According to the Proxy Statement, another bidder, "Party A," offered the Company $90 per share, and that the Company and Party A are continuing their negotiations. Despite this higher bid and continuing negotiations, the Board is recommending to the Company's shareholders that they vote in favor of the Proposed Transaction. Because of this potentially competing bid, it is imperative that Anixter's stockholders be provided with all material information, so that they can make an informed decision about the Proposed Transaction.

33. In soliciting shareholder approval for the Proposed Transaction, Defendants caused the issuance of the Proxy Statement, which purports to contain an overview of the Proposed Transaction, but omits certain critical information, rendering portions of the Proxy Statement materially incomplete and/or misleading, in violation of the Exchange Act provisions discussed herein. As a result, Anixter shareholders lack material information necessary to allow

them to make an informed decision concerning whether or not to vote in favor of the Merger, or exercise their entitlement to appraisal rights.

Material Omissions Concerning Anixter's Advisors' Fairness Opinions

34.     The Proxy Statement omits material information concerning the opinions rendered by Centerview Partners LLC ("Centerview") and Wells Fargo Securities, LLC ("Wells Fargo Securities"), the financial advisors retained by the Company in connection with the Proposed Transaction, dated as of November 21, 2019, both of whom found that the Merger Consideration specified in the Amended Merger Agreement was fair, from a financial point of view, to the holders of the Company's common stock.

35.     *First,* the Proxy Statement omits material information from both Centerview's and Wells Fargo Securities' *Discounted Cash Flow ("DCF") Analyses*. Both analyses were "used to derive a valuation of an asset or set of assets by calculating the "present value" of estimated future cash flows of the asset or set of assets…" (Proxy Statement at 58) "based on the Company projections and the calculations of risk adjusted, after-tax unlevered free cash flows…" *Id.* However, despite being inherent in the *DCF Analyses*, the Proxy Statement fails to disclose the line items Centerview and Wells Fargo Securities used to determine the Company's free cash flows.

36.     Moreover, in furtherance of the *Analyses*, both Centerview and Wells Fargo Securities "calculated an implied per share equity range for the shares of Company common stock by discounting to present value…" Proxy Statement at 58. Centerview utilized discount rates ranging from 9.25% to 11.25%, a range "reflecting Centerview's analysis of the Company's weighted average cost of capital..." *Id*. Wells Fargo Securities, on the other hand, adopted discount rates ranging from 9.50% to 11.50%, "chosen by Wells Fargo Securities based on its

experience and professional judgment taking into account an analysis of the Company's weighted average cost of capital." Proxy Statement at 64. The Proxy Statement failed to identify the numeric inputs used to calculate either range of discount rates.

37. Likewise, there is no disclosure in the Proxy Statement of the basis for the perpetuity growth rates accounted for in either Centerview or Wells Fargo Securities' *DCF Analyses.*

38. Nor is there any disclosure of whether Anixter's $96.2MM in Net Operating Losses, at $2.87 per share gross, were incorporated into Centerview's and Wells Fargo Securities' *Analyses*. Consequently, the Proxy Statement provides a wholly insufficient description thereof.

39. Insofar as forecasted financial information was undoubtedly material to the amendment of the Initial Merger Agreement, its complete and comprehensive disclosure is material to Anixter stockholders' decision on how to vote their shares. It provides stockholders with the information necessary to assess and better understand the future financial performance and thus, the viability of their investments. In that regard, the financial information and valuation methods used to generate Centerview's and Wells Fargo Securities' *Analyses* must also be fairly disclosed.

40. *Second*, the Proxy Statement omits material information in connection with Centerview's review of "publicly available Wall Street research analyst reports" (Proxy Statement at 58) in order to ascertain stock price targets for the Company's shares. The Proxy Statement lists the "low and high stock price targets…ranging from $73.00 to $103.00 per share." *Id.* Yet it fails to disclose all the price targets used, and there is no disclosure of the mean or median values of the reviewed targets.

41. *Third,* despite Wells Fargo Securities conducting a *Selected Public Companies Analysis,* the Proxy Statement discloses neither the mean nor median multiples of the selected public companies, nor does it disclose all of Anixter's multiples.

42. *Fourth*, the Proxy Statement omits material information regarding Wells Fargo Securities' *Selected Precedent Transactions Analysis.* "Wells Fargo Securities reviewed… financial data relating to…recent transactions involving target companies in the electrical distribution industry." Proxy Statement at 63. In so doing, Wells Fargo Securities calculated the multiples for each transaction using "the ratio of the target company's enterprise value to such target company's EBITDA for the twelve-month period prior to announcement of the applicable transaction" (Registration Statement at 64). However, the Proxy Statement did not disclose the multiples of each deal, nor the mean or median multiples for the group of precedent transactions.

43. Each shareholder of Anixter common stock will have the right to receive $82.50 per share in cash following the effective time of the Merger. Centerview's and Wells Fargo Securities' financial analyses as to the value of the Anxiter's common stock are necessary to allow Anixter shareholders to value their shares, evaluate the fairness of the Merger Consideration, and to make an informed decision concerning whether to vote in favor of the Merger or exercise their entitlement to appraisal rights.

44. Failure to disclose the information discussed above prevents shareholders from understanding the context of the figures or considering the potentially anomalous nature of the inputs thereto or the ranges derived therefrom.

45. The real informative value of a financial advisors' work is not in its conclusion, but in the valuation analyses that buttress that result. Accordingly, the numerical inputs and line items incorporated into the financial analyses also constitute material information, absent which

Anixter shareholders will be unable to determine whether the Proposed Transaction is indeed fair and in their best interest.

46. Based on the foregoing disclosure deficiencies in the Proxy Statement, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Anixter stockholders will suffer, absent judicial intervention.

## CLASS ACTION ALLEGATIONS

47. Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Anixter (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

48. This action is properly maintainable as a class action for the following reasons:

    a. The Class is so numerous that joinder of all members is impracticable. As of December 3, 2019, there were approximately 33,827,906 shares of Anixter common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

    b. Questions of law and fact are common to the Class, including, among others: (i) whether Defendants have violated Sections 14(a) and 20(a) of the Exchange Act in connection with the Proposed Transaction; and (ii) whether Plaintiff and the Class would be irreparably harmed if the Proposed Transaction is consummated as currently contemplated and pursuant to the Proxy Statement as currently composed.

    c. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

   d. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

   e. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

   f. A class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

   g. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate.

## CAUSES OF ACTION

### COUNT I
### Claim for Violation of Section 14(a) of the Exchange Act
### and Rule 14a-9 Promulgated Thereunder
### (Against All Defendants)

49. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person . . . to solicit or to permit the use of his name to solicit any Proxy Statement or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n (a)(1).

51. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that solicitation communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false

or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9(a).

52. Rule 14a-9 further provides that, "[t]he fact that a proxy statement, form of proxy or other soliciting material has been filed with or examined by the Commission shall not be deemed a finding by the Commission that such material is accurate or complete or not false or misleading, or that the Commission has passed upon the merits of or approved any statement contained therein or any matter to be acted upon by security holders. No representation contrary to the foregoing shall be made." 17 C.F.R. § 240.14a-9(b).

53. As discussed herein, the Proxy Statement misrepresents and/or omits material facts concerning the Merger.

54. Defendants prepared, reviewed, and caused the filing and dissemination of the false and misleading Proxy Statement to Anixter shareholders. In doing so, Defendants knew or recklessly disregarded that the Proxy Statement fails to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

55. The omissions and incomplete and misleading statements in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote their shares. In addition, a reasonable investor would view such information as altering the "total mix" of information made available to shareholders.

56. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Proxy Statement, Defendants were undoubtedly aware of this information and had previously reviewed it, including participating in the Merger negotiation and sales

process and reviewing Centerview's and Wells Fargo Securities' complete financial analyses purportedly summarized in the Proxy Statement.

57. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Merger.

58. Anixter is deemed liable as a result of the Individual Defendants' negligence and/or recklessness in preparing and reviewing the Proxy Statement.

59. Defendants knew that Plaintiff and the other members of the Class would rely upon the Proxy Statement in determining whether to vote in favor of the Merger.

60. As a direct and proximate result of Defendants' unlawful course of conduct in violation of Section 14(a) of the Exchange Act and Rule 14d-9, absent injunctive relief from the Court, Plaintiff and the other members of the Class will suffer irreparable injury by being denied the opportunity make an informed decision concerning whether or not to vote in favor of the Merger.

61. Plaintiff and the Class have no adequate remedy at law.

### COUNT II
### Claim for Violations of Section 20(a) of the Exchange Act
### (Against the Individual Defendants)

62. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

63. The Individual Defendants acted as controlling persons of Anixter within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Anixter, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement

filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

64. Each of the Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

65. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Merger. They were thus directly connected with and involved in the making of the Proxy Statement.

66. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons and the acts described herein, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

67. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

68. Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the class representative and Plaintiff's counsel as class counsel;

B. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C. Directing the Individual Defendants to disseminate an amendment to the Company's Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Directing Defendants to account to Plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 19, 2019 **RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*

**OF COUNSEL:**
Brian D. Long (#4347)
Gina M. Serra (#5387)
**WOLF POPPER LLP**
300 Delaware Avenue, Suite 1220
Carl L. Stine
Wilmington, DE 19801
Antoinette A. Adesanya
Telephone: (302) 295-5310
845 Third Avenue
Facsimile: (302) 654-7530
New York, NY 10022
Email: bdl@rl-legal.com
Telephone.: (212) 759-4600
Email: gms@rl-legal.com
Facsimile: (212) 486-2093
Email: cstine@wolfpopper.com

*Attorneys for Plaintiff*